UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RIEMER & BRAUNSTEIN LLP,
    Plaintiff,

v.

MONROE CAPITAL MANAGEMENT ADVISORS LLC; MONROE CAPITAL PARTNERS FUND LP; MONROE CAPITAL CORPORATION; and MONROE CAPITAL PARTNERS FUND LLC,
    Defendants.

Civil Action No. 18-cv-12401-ADB

## **MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

BURROUGHS, D.J.

In this legal fees dispute, Plaintiff Riemer & Braunstein LLP ("Riemer & Braunstein") brings claims against former clients Defendants Monroe Capital Management Advisors LLC, Monroe Capital Partners Fund LP, Monroe Capital Corporation, and Monroe Capital Partners Fund LLC (collectively, "Monroe") for breach of contract, quantum meruit, unjust enrichment, account annexed, and breach of the obligations of good faith and fair dealing. [ECF No. 1-1 ("Compl." or "Complaint")]. Pending before the Court is Monroe's motion to dismiss the action for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer the case under 28 U.S.C. § 1404(a) to either the Northern District of Illinois or the Northern District of Texas ("Motion to Dismiss or Transfer"). [ECF No. 6]. For the reasons set forth below, Monroe's Motion to Dismiss or Transfer [ECF No. 6] is DENIED.

I.    **BACKGROUND**

The following facts are drawn from the Complaint, the allegations of which are accepted as true for the purpose of this motion to dismiss. See Gill v. Nakamura, No. 14-cv-13621, 2015

WL 5074475, at *2 (D. Mass. July 24, 2015). As it may on a motion to dismiss under Rule 12(b)(3), the Court has also considered affidavits and documentation submitted by the parties on the issue of whether venue is proper. See id.; Universal Trading & Inv. Co. v. Bureau of Representing Ukr. Interests in Int'l & Foreign Cts., 898 F. Supp. 2d 301, 317 (D. Mass. 2012).

Riemer & Braunstein is a Massachusetts limited liability partnership with a principal place of business in Boston, MA. [Compl. ¶ 1]. Defendants Monroe Capital Management and Monroe Capital Partners are Delaware limited liability companies headquartered in Chicago, IL. [Id. ¶¶ 2, 4]. Defendant Monroe Capital Partners Fund LP is a Delaware limited liability partnership headquartered in Chicago, IL. [Id. ¶ 3]. Defendant Monroe Capital Corporation is a public company incorporated in Maryland that transacts business by, through, and with its related and affiliated entities. [Id. ¶ 5]. Although none of the Monroe entities named as a defendant maintains an office in Massachusetts, [ECF No. 6-1 ¶ 5], one of Monroe Capital Corporation's affiliates, Monroe Capital, LLC, does. [Id. ¶ 4; ECF No. 7-1].

Monroe retained Riemer & Braunstein in September 2005 and has engaged the law firm in over 20 matters since. [Compl. ¶ 7]. Central to the instant dispute, Monroe hired Riemer & Braunstein in 2016 to represent it as a secured senior lender in a planned bankruptcy proceeding for TPP Acquisition, Inc. (the "Debtor"), a company that Monroe indirectly owned. [Id. ¶¶ 8–9]. The Debtor filed for Chapter 11 bankruptcy on September 2, 2016 in the United States Bankruptcy Court for the Northern District of Texas ("Bankruptcy Court"). [Id. ¶ 11]. Prior to the Chapter 11 filing, Riemer & Braunstein represented Monroe in pre-bankruptcy negotiations, agreements, and dealings with the Debtor. [Id. ¶ 10]. These transactions, the details of which are not relevant to the instant motion, later resulted in hearings before the Bankruptcy Court and, ultimately, an adversary proceeding filed by the Official Committee of Unsecured Creditors

against Monroe and affiliates of the Debtor on December 9, 2016 ("Adversary Proceeding"). [Id. ¶¶ 10, 12–15, 18]. The complaint in the Adversary Proceeding contained 28 claims for relief. [Id. ¶ 18].

Monroe asked Riemer & Braunstein to defend it and the Debtor's affiliates in the Adversary Proceeding. [Id. ¶ 17]. As in other matters in which it engaged Riemer & Braunstein for representation, Monroe agreed to compensate Riemer & Braunstein for legal services on an hourly basis at established billing rates, including costs and disbursements. [Id. ¶ 19]. Riemer & Braunstein provided written budgets and fee estimates to Monroe and informed Monroe of its billing rates. [Id.]. Monroe instructed Riemer & Braunstein to forward its legal services invoices to Monroe Capital Advisors, which is not a defendant to this action. [Id.]. Monroe paid the invoices by wire or check sent to Riemer & Braunstein's Boston office. [Id.].

In early 2017, Riemer & Braunstein filed a motion to dismiss 19 of the 28 counts in the Adversary Proceeding, which was allowed as to seven counts. [Id. ¶ 20]. In early 2018, a motion for partial summary judgment was also granted. [Id. ¶ 21].

Throughout this time, Boston-based attorneys led the work on the Adversary Proceeding and exchanged communications with Monroe and its agents from Boston. [Id. ¶ 19]. Monroe's Chief Operating Officer and Chief Credit Officer (Michael J. Egan), Chief Executive Officer and President (Theodore L. Koenig), and General Counsel (Peter Gruszka) directed Riemer & Braunstein's work in the first half of 2017. [Id. ¶ 22]. Monroe's CEO met with Riemer & Braunstein attorneys in the law firm's Boston office on January 10, 2017 to discuss the defense in the Adversary Proceeding. [Id.]. Beginning in July 2017, Thomas Cronin ("Cronin"), an attorney not affiliated with Riemer & Braunstein, was retained by Monroe to serve as co-counsel in the Adversary Proceeding and to control the litigation strategy. [Id. ¶ 23].

In January 2018, Cronin caused Monroe to replace Riemer & Braunstein as lead trial counsel with a local attorney, Jay Joseph Madrid ("Madrid"). [Id. ¶ 25]. Riemer & Braunstein was told that it would remain trial co-counsel and was "instructed to do all work that was necessary to protect Monroe" regarding the February 5, 2018 trial date until Madrid was prepared to try the case. [Id. ¶¶ 25, 27]. On January 8, 2018, Riemer & Braunstein was asked to oppose a trial continuance requested by opposing counsel and to prepare for trial. [Id. ¶ 27]. Preparation for trial continued through January, including preparing witness and exhibits lists, conclusions of law, a trial brief, and a joint pre-trial memorandum that were due on January 15, 2018 and responses to motions *in limine* that were due January 29, 2018. [Id. ¶ 29]. During this time, Riemer & Braunstein also worked with Madrid to get him up to speed and to coordinate tasks for trial. [Id.].

On January 10 and 11, 2018, Riemer & Braunstein sent Monroe invoices totaling $126,809.47 for services rendered in December 2017, including for obtaining partial summary judgment. [Id. ¶ 26]. On February 5, 2018, Riemer & Braunstein sent Monroe additional invoices for services rendered in January 2018, bringing the balance due to $392,164.44. [Id. ¶¶ 28, 31]. Monroe did not object to the January invoice, but did object to the February one and sought to negotiate a discount. [Id. ¶ 28].

In February 2018, Riemer & Braunstein made a demand upon Monroe for payment of all amounts due. [Id. ¶ 30]. When Monroe refused to pay the amounts due, Riemer & Braunstein sought leave of the Bankruptcy Court to withdraw as counsel for Monroe based on nonpayment of fees, which the Bankruptcy Court allowed on March 9, 2018. [Id. ¶ 32]. On March 14, 2018, Monroe terminated Riemer & Braunstein from all non-Adversary Proceeding matters. [Id. ¶ 33].

At least once thereafter, Monroe requested assistance from Riemer & Braunstein, for which work Riemer & Braunstein submitted a May 15, 2018 invoice. [Id. ¶ 34].

On October 18, 2018, Riemer & Braunstein filed suit in Suffolk County Superior Court alleging breach of contract, quantum meruit, unjust enrichment, account annexed, and breach of obligations of good faith and fair dealing. [ECF No. 1-1 at 11–13]. The total amount of fees and disbursements unpaid at the time the Complaint was filed was $394,911.44. [Compl. ¶ 36]. Monroe removed the action to this Court on November 16, 2018 on the basis of diversity jurisdiction, [ECF No. 1 at 1], and then moved to dismiss or transfer on November 30, 2018, [ECF No. 6]. Riemer & Braunstein opposed dismissal on December 14, 2018. [ECF No. 7]. Monroe filed a reply on December 31, 2018, [ECF No. 11], and Riemer & Braunstein submitted a sur-reply on January 8, 2019, [ECF No. 15].

## II. DISCUSSION

### A. Venue

Venue of removed actions is governed by 28 U.S.C. § 1441 ("Section 1441"), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441; see Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953) ("The venue of removed actions is governed by [1441(a)] . . . ."); see also Sweeney v. Resolution Tr. Corp., 16 F.3d 1, 4 (1st Cir. 1994) ("Given that the [defendant] removed this case to the district court of the United States where the action was pending, venue was proper pursuant to 28 U.S.C. § 1441(a) . . . ."). The general venue statute, 28 U.S.C. § 1391(b)

5

("Section 1391(b)"), is not applicable to removed actions. See 28 U.S.C. § 1391(b);[1] Lambert v. Kysar, 983 F.2d 1110, 1113 n.2 (1st Cir. 1993) ("[T]he venue of a removed action is not governed by § 1391, but by 28 U.S.C. § 1441(a)."); see also Polizzi, 345 U.S. at 665 ("Section 1391(a) limits the district in which an action may be 'brought.' Section 1391(c) similarly limits the district in which a corporation may be 'sued.' This action was not 'brought' in the District Court, nor was Respondent 'sued' there; the action was brought in a state court and removed to the District Court."). "Once a defendant has raised the issue of venue through a motion to dismiss, the burden falls on the plaintiff to demonstrate that venue is proper." Barrigas v. United States, No. 17-cv-10232-ADB, 2018 WL 1244780, at *6 (D. Mass. Mar. 9, 2018) (quoting Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc., 733 F. Supp. 2d 204, 211 n.49 (D. Mass. 2010)).

Monroe's motion to dismiss is premised on the assertion that Section 1391(b) controls whether venue in this district is proper. [ECF No. 6 at 2]. Monroe argues that the allegations of the Complaint, even taken as true, cannot establish that Massachusetts is "a judicial district in which a substantial part of the events or omissions given rise to the claim occurred," as required by Section 1391(b). [Id. at 3–5]. As Riemer & Braunstein observes, however, Section 1391(b) "has no application to this case because it is a removed action." [ECF No. 7 at 8–9 (quoting JMTR Enters., LLC v. Duchin, 42 F. Supp. 2d 87, 99 (D. Mass. 1999))].

---

[1] Section 1391(b) permits civil actions to be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

The venue of removed actions is governed by Section 1441(a), which allows for civil actions brought in state court to be removed to the federal district court "embracing the place where [the state] action is pending." 28 U.S.C. § 1441. Here, Riemer & Braunstein brought this action in Suffolk County Superior Court. See generally [Compl.]. Monroe removed this action to the District of Massachusetts, which is the proper venue for an action removed from Suffolk County Superior Court. [ECF No. 1]; see Polizzi, 345 U.S. at 665. Accordingly, venue in the District of Massachusetts is proper.[2]

### B.     Transfer Pursuant to 28 U.S.C. § 1404(a)

A district court may transfer actions brought in a proper venue to any other district in which the case could have been brought "for the convenience of parties and witnesses, in the interest of justice" under 28 U.S.C. § 1404(a) ("Section 1404"). "Section 1404 'is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" Fed. Ins. Co. v. XTRA Intermodal, Inc., No. 14-cv-14010-ADB, 2015 WL 4275181, at *4 (D. Mass. July 15, 2015) (quoting Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009)). "When considering a motion to transfer venue, courts consider both private and public interest factors, including '1) the plaintiff's choice of forum, 2) the relative convenience of the parties, 3) the convenience of the witnesses and location of documents, 4) any connection between the forum and the issues, 5) the law to be applied and 6) the state or public interests at stake.'" Id. (quoting

---

[2] Removing defendants do not lose the ability to challenge the state court venue where the case was initially filed. See Lambert v. Kysar, 983 F.2d 1110, 1113 n.2 (1st Cir. 1993); Iantosca v. Benistar Admin Servs., Inc., No. 08-cv-11785-NMG, 2009 WL 2382750, at *6 (D. Mass. July 30, 2009). Any argument that state court venue was improper here would be futile, though, because Riemer & Braunstein brought this action in the county where it has its usual place of business. See Mass. Gen. Laws ch. 223, § 1 (providing that "if any one of the parties [to an action] lives in the commonwealth, [the action may] be brought in the county where one of them lives or has his usual place of business").

Momenta Pharm., Inc. v. Amphastar Pharm., Inc., 841 F. Supp. 2d 514, 522 (D. Mass. 2012)). "The burden of proof rests with the party seeking transfer . . . ." Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000).

Here, for the reasons articulated below, each of the factors of the Section 1404 analysis either favors Riemer & Braunstein or is neutral. Accordingly, Monroe has not met its burden of demonstrating that transfer to either the Northern District of Illinois or the Northern District of Texas[3] is warranted.

1. Plaintiff's Choice of Forum

A Section 1404 analysis begins with "a strong presumption in favor of the plaintiff's choice of forum." Coady, 223 F.3d at 11 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). "However, the weight to be accorded plaintiff's choice of forum varies with the circumstances of the case." Fed. Ins. Co., 2015 WL 4275181, at *4 (quoting Brant Point Corp. v. Poetzsch, 671 F.Supp. 2, 5 (D. Mass. 1987)). The greatest degree of deference is afforded to plaintiffs who select their home forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981).[4] Here, Riemer & Braunstein, a Massachusetts limited liability partnership with a principal place of business in Massachusetts, brought suit in its home forum of Massachusetts. See [Compl. ¶ 1]. Riemer & Braunstein's selection of Massachusetts as the forum for this litigation is therefore entitled to the greatest degree of deference. See Piper Aircraft, 454 U.S. at 256; OsComp Sys., Inc. v. Bakken Exp., LLC, 930 F. Supp. 2d 261, 275 (D. Mass. 2013).

---

[3] The parties do not dispute that the Northern District of Illinois or the Northern District of Texas are districts in which the action could have been brought.

[4] Although Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981), is a forum non conviens case, courts routinely apply it in Section 1404 cases. See, e.g., Montoya v. CRST Expedited, Inc., 285 F. Supp. 3d 493, 500 (D. Mass. 2018); Atari v. United Parcel Serv., Inc., 211 F. Supp. 2d 360, 362 (D. Mass. 2002).

## 2. Convenience of the Parties

The second factor is the relative convenience of the parties. See Fed. Ins. Co., 2015 WL 4275181, at *4; Wolverine Proctor & Schwartz, Inc. v. Aeroglide Corp., 394 F. Supp. 2d 299, 312 (D. Mass. 2005) (noting that on motion to transfer, "court must consider the convenience of both parties"). Monroe argues that the Northern District of Illinois is a more convenient forum than Massachusetts because Monroe's principal offices are located in Chicago; Riemer & Braunstein maintains an office in Chicago; Jeffrey Ganz, who managed the Adversary Proceeding for Riemer & Braunstein, is barred in Illinois; and, Chicago's central location would make travel easy. [ECF No. 6 at 8; ECF No. 11 at 4]. In the alternative, Monroe asserts that the Northern District of Texas is a more convenient forum than Massachusetts as it is where the Adversary Proceeding and the underlying bankruptcy case are pending and because Riemer & Braunstein attorneys have a history of traveling to Texas where they have appeared in connection with their representation of Monroe. [ECF No. 6 at 8; ECF No. 11 at 9]. Riemer & Braunstein responds that neither Illinois nor Texas are more convenient for it than Massachusetts and contends that transfer will merely shift inconvenience between the parties, one of which will need to travel to each proposed forum. [ECF No. 7 at 13–14]. The Court agrees. Where the effect of transfer would be to merely shift inconvenience from Monroe to Riemer & Braunstein, the convenience of the parties factor is neutral and does not outweigh the presumption in favor of Riemer & Braunstein's selected forum. See Boateng v. Gen. Dynamics Corp., 460 F. Supp. 2d 270, 275 (D. Mass. 2006) ("The presumption in favor of a plaintiff's choice of forum renders transfer inappropriate where its effect is merely to shift the inconvenience from one party to the other." (internal quotations and citation omitted)).

### 3. Convenience of the Witnesses and Location of Evidence

The third factor in a Section 1404 analysis considers the convenience of witnesses and the location of evidence. See Fed. Ins. Co., 2015 WL 4275181, at *4. "The convenience of witnesses is an extremely important, if not the most important, factor to be analyzed in determining whether to change a litigation's venue." Vass v. Blue Diamond Growers, No. 14-cv-13610-IT, 2015 WL 2226260, at *5 (D. Mass. May 12, 2015) (quoting Gemini Inv'rs, Inc. v. Ameripark, Inc., 542 F. Supp. 2d 119, 126 (D. Mass. 2018) (internal quotation marks omitted)). When weighing this factor, courts consider "the number of potential witnesses located in either district, the nature and quality of their testimony, and whether or not the witnesses can be compelled to testify." Dress v. Capital One Bank (USA), N.A., No. 4:18-cv-40064, 2019 WL 1316738, at *3 (D. Mass. Mar. 22, 2019) (citing Vass, 2015 WL 2226260, at *5). A party seeking transfer based on the convenience of witnesses "must . . . specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail." Boateng, 460 F. Supp. 2d at 275 (quoting Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991)).

The parties largely agree that party witnesses will comprise most of the witnesses in this dispute. [ECF No. 6 at 8; ECF No. 11 at 5–6]. Monroe identifies five company witnesses who are each located in Illinois, whereas Riemer & Braunstein identifies ten witnesses, all of whom are located in Massachusetts. [ECF No. 7 at 13; ECF No. 7-1 ¶¶ 5–7; ECF No. 11 at 5]. There is no suggestion that witnesses affiliated with the employer parties will be unable or unwilling to be deposed or testify in whichever district the case is heard, which decreases the significance of this factor. See Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001) ("If . . . a court order or the persuasion of an employer who is a party to the action can secure the appearance of witnesses regardless of the location of forum, that factor diminishes in importance.").

The parties disagree as to whether third-party witnesses will be necessary. Monroe initially disclaimed the need for third-party witnesses, [ECF No. 6 at 8], but characterized convenience to third-party witnesses as a "critical factor" in its reply brief, which listed seven third-party witnesses associated with the Adversary Proceeding or underlying bankruptcy case, [ECF No. 11 at 7]. Monroe identifies each of these third-party witnesses as located in Illinois or Texas. [ECF No. 11 at 7–8]. Riemer & Braunstein asserts that if any third-party witnesses are needed, they may be deposed where they are located. [ECF No. 7 at 12–13].

Considering the information provided by the parties as to potential witnesses, their location, and what their testimony will likely entail, the Court concludes that convenience to witnesses does not weigh in favor of transfer. Many of the proposed witnesses are party witnesses who may be compelled to testify regardless of the forum. See Dress, 2019 WL 1316738, at *3. To the extent any third-party witnesses are required to testify to the quality of Riemer & Braunstein's work product, such as Monroe's successor counsel in the Adversary Proceeding, the witnesses are limited in number, are dispersed between Illinois and Texas, and Riemer & Braunstein has agreed that they may be deposed where they are located, which makes neither forum more convenient than Massachusetts, where most of the party witnesses reside. See, e.g., [ECF No. 11 at 7–9].

The location of evidence portion of this factor has become less significant in light of technological advances that allow documents to be stored and sent electronically. See Rosenthal v. Unum Grp., No. 17-cv-40064-TSH, 2018 WL 1250483, at *3 (D. Mass. Mar. 12, 2018). Monroe asserted in its motion to dismiss that "[a]ll of the documents related to the Bankruptcy Case[,] the Adversary Proceeding[,] and [Riemer & Braunstein's] representation were converted to electronic form. [ECF No. 6 at 8]. Monroe argued in its reply briefing, however, that "the

11

materials on which the[] third-party witnesses will be examined are related to the Dallas-based bankruptcy case and adversary action and, as a result, are located in Dallas, Texas." [ECF No. 11 at 9]. Even if the documents related to third-party witnesses are located in Texas, the Court assumes based on the parties' representations that these exhibits can be made available electronically, which makes this portion of the factor neutral. Taken together with the conclusion regarding the convenience of witnesses and the relative ease of sharing documents electronically, the third factor weighs in favor of a Massachusetts forum.

### 4. Connection Between Forum State and the Issues in Dispute

The fourth factor assesses if there is any connection between the forum state and the issues in dispute that would make one forum more desirable than another. See Fed. Ins. Co., 2015 WL 4275181, at *4. Monroe asserts that "there is no connection to Massachusetts that would justify this matter remaining" in this district except for Riemer & Braunstein's physical presence in Massachusetts and the fact that the attorneys performing work for Monroe were located in Boston. [ECF No. 6 at 9]. Riemer & Braunstein contends that the Commonwealth of Massachusetts has a significant interest in adjudicating a fee dispute concerning a Massachusetts partnership whereas Illinois and Texas have only "a lesser interest" in adjudicating a claim involving Delaware and Maryland corporate entities. [ECF No. 7 at 15]. The Court agrees. Massachusetts has the strongest connection of the three proposed forums based on its interest in having a fee dispute concerning a Massachusetts partnership, decided in Massachusetts. See OsComp Sys., 930 F. Supp. 2d at 275 (finding that the action was "necessarily connected to Massachusetts because it involve[d] [defendant's] alleged failure to pay for services provided under its Contracts with a Massachusetts-based company").

5. The Law to Be Applied

The fifth factor concerns which law will be applied to the dispute. See Fed. Ins. Co., 2015 WL 4275181, at *4. Although other federal district courts are "undoubtedly capable" of applying Massachusetts law, "[a] district's familiarity with the governing law is an appropriate factor to consider" in this analysis. See Montoya v. CRST Expedited, Inc., 285 F. Supp. 3d 493, 501 (D. Mass. 2018) (quoting Johnson v. VCG Holding Corp., 767 F. Supp. 2d 208, 217 (D. Me. 2011)). Here, Riemer & Braunstein correctly asserts that their claims are governed by Massachusetts law. [ECF No. 7 at 15–16]. Although courts in the Northern District of Illinois or the Northern District of Texas could ably handle Massachusetts state law claims, this factor weighs slightly against transfer because it is "plausible" that this Court is "more familiar" with and better situated to apply Massachusetts law. Montoya, 285 F. Supp. 3d at 501 (citing Johnson, 767 F. Supp. 2d at 217).

6. State or Public Interests at Stake

Public interest factors considered in a Section 1404 analysis include "administrative difficulties flowing from court congestion," "local interest in having localized controversies decided at home," and "the interest in having the trial of a diversity case in a forum that is at home with the law." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 63 n.6 (2013) (quoting Piper Aircraft, 454 U.S. at 241 n.6). Riemer & Braunstein argues that this factor favors Massachusetts because of the "appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case." [ECF No. 7 at 16 (quoting R.W. Granger & Sons, Inc. v. Rojac Co., 885 F. Supp. 319, 324 (D. Mass. 1995))].

The Court agrees that this factor weighs against transfer. Here, there is no indication that courts in this district are any more or less congested than courts in the Northern District of

13

Illinois or the Northern District of Texas and there is no "localized controvers[y]" at issue. The case, however, was removed to this Court pursuant to diversity jurisdiction, and, as discussed in Section II.B.4, supra, there is a slight interest in having this diversity case heard in Massachusetts, which is the forum that is "at home with the law" implicated in the Complaint. See Atl. Marine Const. Co., 571 U.S. at 63 n.6.

### III. CONCLUSION

Accordingly, Monroe's Motion to Dismiss or Transfer [ECF No. 6] is DENIED. Venue in the District of Massachusetts is proper, and the circumstances of this case do not warrant transfer to either the Northern District of Illinois or the Northern District of Texas.

**SO ORDERED.**

May 16, 2019                                         /s/ Allison D. Burroughs
                                                     ALLISON D. BURROUGHS
                                                     U.S. DISTRICT JUDGE